IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

SUMMIT DNA, L.L.C.,

    Plaintiff,

       v.

                  CIVIL NO.: WDQ-14-1329

PROOVE BIOSCIENCES, INC.,
et al.,

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Summit DNA, L.L.C. ("Summit") sued Proove Biosciences, Inc. ("Proove") and Proove's president, Brian Meshkin, for breach of contract and other claims. Pending is the Defendants' motion to dismiss the amended complaint. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion to dismiss will be granted in part and denied in part.

## I. Background[1]

On March 8, 2013, Summit and Proove entered into a "Non-Exclusive Independent Sales Organization Agreement," which was prepared by Proove. ECF No. 24 (hereinafter, "Am. Compl.") at

---

[1] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

¶¶ 7-9.  Under the agreement, "Summit was contractually engaged 'on a non-exclusive basis' to generate potential accounts through qualified sales leads for Proove's services."  *Id*. at ¶ 10.  In exchange, Summit would receive a commission for each account generated.  *Id*. at ¶ 11.  "Proove did not pay Summit commissions as required by the Agreement."[2]  *Id*. at ¶ 14.

On March 24, 2014, Proove terminated the Agreement, alleging that Summit had violated the Agreement's conflict of interest provision.  *Id*. at ¶¶ 18-20.  On March 26, 2014, Summit provided notice of cure asserting that it had not breached the provision, and "then terminated the Agreement itself."  *Id*. at ¶ 23.  After the termination of the Agreement, on March 28, 2014, Meshkin, "contact[ed] business relations of Summit and ma[de] damaging false statements as to Summit."  *Id*. at ¶ 24.

On April 18, 2014, Summit sued Proove for breach of contract and declaratory judgment, and Brian Meshkin for defamation and tortious interference with business relationships.  ECF No. 1.  On May 15, 2014, Proove answered the complaint, counterclaimed, and filed a third party complaint against Summit's president.  ECF No. 13.  On June 9, 2014, Summit filed an amended complaint

---

[2] Summit alleges that during contract discussions, "Proove and Meshkin represented that commissions would be paid to Summit for sales generated by Summit's sales representative and that Proove and Meshkin would not solicit Summit's sales representatives."  Am. Compl. at ¶ 6.  According to Summit, "Meshkin made these representations in his capacity as an officer of Proove and in his individual capacity."  *Id*.

alleging nine causes of action: breach of contract against Proove (Count I), declaratory judgment against Proove (Count II), defamation against Proove and Meshkin (Count III), tortious interference with business relationships against Proove and Meshkin (Count IV), fraudulent misrepresentation against Proove and Meshkin (Count V), negligent misrepresentation against Proove and Meshkin (Count VI), tortious interference with prospective economic advantage against Proove and Meshkin (Count VII), unjust enrichment against Proove and Meshkin (Count VIII), and conversion against Proove and Meshkin (Count IX).  ECF No. 24.

On January 16, 2015, the Defendants moved to dismiss the amended complaint for failure to state a claim.  ECF No. 36.  On February 2, 2015, Summit opposed the motion.  ECF No. 39.  On February 20, 2015, the Defendants replied.  ECF No. 40.

## II. Analysis

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief may be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. Breach of Contract

Summit alleges that Proove breached the contract "by failing to pay Summit commissions pursuant to the Agreement." Am. Compl. at ¶ 29.  To survive a motion to dismiss, "a complaint for breach of contract must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation." *See Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F.Supp.2d 785, 791 (D. Md.2002) (*citing Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 279 Md. 476, 480 (Md. 1977)).  Summit provided the contract between the parties[3] and alleged in the amended complaint that Proove breached the provision requiring Proove to pay Summit commissions for generated leads.  *See* Am. Compl. at 8; ECF No. 1, Ex. A at 2-3.  This is sufficient to state a claim for breach of contract.

Proove, however, asserts that Summit cannot bring suit for breach of contract because Summit did not satisfy a condition precedent to Proove's performance.  ECF No. 37 at 7-8.  Under Maryland law,[4] a condition precedent "a fact, other than mere

---

[3] Summit attached the contract to the original complaint.  ECF No. 1, Ex. A.  However, although Summit refers to the contract as an exhibit throughout the amended complaint, it was mistakenly not attached to the amended complaint.

[4] This is a case based in diversity jurisdiction, and the parties' contract states that Maryland law shall govern any dispute.  *See* ECF No. 1-2 at 7.

lapse of time, which, unless excused, must exist or occur before

a duty of immediate performance of a promise arises."

*Chirichella v. Erwin*, 310 A.2d 555, 557 (Md. 1973); *see also*

*Aronson & Co. v. Fetridge*, 957 A.2d 125, 144 (Md. Ct. Spec. App.

2008). "Generally, when a condition precedent is unsatisfied,

the corresponding contractual duty of the party whose

performance was conditioned on it does not arise." *B & P*

*Enters. v. Overland Equip. Co.*, 758 A.2d 1026, 1038 (Md. Ct.

Spec. App. 2000)), *cert. denied*, 392 Md. 726, 898 A.2d 1005

(2006). "[H]owever, because of 'the potentially severe

implications of the imposition of a condition precedent, courts

have been careful to distinguish a condition precedent from a

covenant, which ordinarily requires only substantial

compliance.'" *Gebhardt & Smith LLP v. Md. Port Admin.*, 982 A.2d

876, 896 (Md. Ct. Spec. App. 2009) (quoting *B & P Enters.*, 758

A.2d at 1038).

"Maryland adheres to the principle of the objective

interpretation of contracts." *Cochran v. Norkunas*, 919 A.2d

700, 709 (Md. 2007). "If a contract is unambiguous, the court

must give effect to its plain meaning and not contemplate what

the parties may have subjectively intended by certain terms at

the time of formation." *Nova Research, Inc. v. Penske Truck*

*Leasing Co., L.P.*, 952 A.2d 275, 283 (Md. 2008). "It is a

fundamental principle of contract law that it is 'improper for

the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" *Calomiris v. Woods*, 727 A.2d 358, 368 (Md. 1999) (quoting *Canaras v. Lift Truck Services*, 322 A.2d 866, 873 (Md. 1974)).

"The question whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation . . ." *Aronson & Co.*, 957 A.2d at 144-45 (internal quotations omitted). "Although no particular form of words is necessary in order to create an express condition, such words and phrases as 'if' and 'provided that,' are commonly used to indicate that performance has expressly been made conditional, as have the words 'when,' 'after,' 'as soon as,' or 'subject to . . . ." *Chirichella*, 310 A.2d at 557 (internal citations omitted).

Proove alleges that Summit violated the Conflict of Interest provision of the contract. ECF No. 37 at 8. The Conflict of Interest provision states:

> [Summit] shall not represent any individual or company directly or indirectly competing with [Proove] by offering same or similar Services(s) during the term of this Agreement and in accordance with Confidential Information, Trade Secrets and Competition provision in this Agreement.

7

ECF No. 1, Ex. A. at 4.   Nothing in the plain language of this provision suggests that it is a condition precedent to Proove's performance.   *See B & P Enters.*, 758 A.2d at 1038; *Gebhardt & Smith LLP*, 982 A.2d at 896.   According to the contract, Summit would develop the leads, and Proove would pay Summit for those leads.   ECF No. 1, Ex. A at 2-3.   Although Summit's alleged violation of the Conflict of Interest provision could constitute a breach of contract, the provision is not a condition precedent to Proove's performance.   *See B & P Enters.*, 758 A.2d at 1038 ("Generally, when a condition precedent is unsatisfied, the corresponding contractual duty of the party whose performance was conditioned on it does not arise.").

Realizing that the plain language of the contract does not support its condition precedent argument, Proove attempts to argue that complete performance under the contract is a condition precedent in all contract suits, and a plaintiff must prove complete performance to state a claim for relief.   *See* ECF No. 37 at 7-8.   Proove's argument is not persuasive.[5]   To interpret conditions precedent in this manner, would negate the definition carefully crafted by Maryland courts.   *See B & P Enters.*, 758 A.2d at 1038; *Gebhardt & Smith LLP*, 982 A.2d at 896.

---

[5] The cases Proove cites do not address the pleadings stage of proceedings and have contracts with explicit conditions precedent.   *See* ECF No. 37 at 7-8.

Although "a court *may* refuse to allow recovery by either party to an agreement because of their mutual fault, which in contract terms might be more properly described as mutual default," this is a fact-specific analysis inappropriate for a motion to dismiss. *See Westinghouse Elec. Corp. v. Garrett Corp.*, 601 F.2d 155, 157-58 (4th Cir. 1979) (emphasis added). Accordingly, the Amended Complaint sufficiently alleges a breach of contract claim.

C. Declaratory Judgment

Summit asserts that there is a "bona fide, actual, present and practical need for a legal determination by [the] Court of the duties, rights and obligations, if any" of Summit and Proove under the agreement. Am. Compl. at ¶ 33. In their motion to dismiss, the Defendants assert that the declaratory judgment claim should be dismissed because all of Summit's other claims fail and there is no justiciable controversy between the parties. ECF No. 37 at 10-11.

Because the Court will not dismiss all the claims in the complaint, there remains a justiciable controversy. Accordingly, the Court will deny the Defendants' motion to dismiss the claim for declaratory judgment.

D. Defamation

On March 28, 2014, Meshkin sent an email "to a business relation of Summit's" stating:

> Additionally, it has come to our attention from multiple representatives of Summit Diagnostic that Summit has been marketing AI Biotech and Genomind genetic testing--which is an overt breach of our Conflict of Interest provision in Summit's contract with Proove.
>
> Thus, we have terminated our contract with Summit Diagnostics and are seeking legal action on related damages.

ECF No. 1, Ex. D.[6]  Summit alleges that these statements are false because Summit did not breach the agreement and "tend to expose Summit to public, scorn, hatred, contempt or ridicule, therby discouraging others in the community from having a good opinion of, or associating with Summit."  Am. Compl. at 9.

"In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements to the satisfaction of the fact-finder: '(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.'"  *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (quoting *Indep. Newspapers, Inc. v. Brodie,* 966 A.2d 432, 448 (Md. 2009)).  The Defendants

---

[6] On the copy of the email provided to the Court, the name of the "business relation" has been redacted.  ECF No. 1, Ex. D.

argue that Summit has failed to properly plead that the email was defamatory or that it is false.  ECF No. 37 at 11-12.

"A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson v. Shiflett*, 602 A.2d 1191, 1210-11 (Md. 1992).  "The threshold question of whether a publication is defamatory in and of itself, or whether, in light of the extrinsic facts, it is reasonably capable of a defamatory interpretation is for the court upon reviewing the statement as a whole; words have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed." *Id*.

1. Defamatory

The Defendants argue that Meshkin's email was not defamatory because they were sent to a single business contact, and "Summit was [not] subjected to '*public* scorn, hatred, contempt of ridicule.'"  ECF No. 37 at 12 (emphasis in original).  The Defendants, however, are confusing the publication requirement with the definition of "defamatory."  A corporation can be defamed if the statement "assail[s] its financial position, its business methods, or accuse[s] it of fraud or mismanagement." *Novick v. Heart Corp.*, 278 F. Supp.

11

277, 280 (D. Md. 1968) (quoting Life Printing & Publishing Co. v. Field, 58 N.E.2d 307 (Ill. App. Ct. 1944)); *see also Gen. Prods. Co. v. Meredith Corp.*, 526 F. Supp. 546, 549-50 (E.D. Va. 1981) ("A corporation may be defamed by statements which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business.") (citing Prosser, Law of Torts, § 111 (4th ed. 1971); Restatement (Second) of Torts, §§ 561, 573 (1976)). Meshkin's email accused Summit of purposefully breaking a conflict of interest provision, which casts aspersions on its business practices and honesty; thus, the statement is defamatory.

2. Falsity

A false statement is one that is not substantially correct; the plaintiff has the burden of proving falsity. *See Jacron Sales Co. v. Sindorf*, 350 A.2d 688, 698 (Md. 1976); *Piracci v. Hearst Corp.*, 263 F.Supp. 511, 513 (D. Md. 1966). In this case, falsity is an issue of contract interpretation: the Defendants argue that the statements were true because Summit violated the Conflict of Interest provision, and Summit asserts that the statements were false because it never breached the contract. *See* Am. Compl. at ¶ 25; ECF No. 37 at 11-12.

As stated previously, "Maryland adheres to the principle of the objective interpretation of contracts." *Cochran*, 919 A.2d at 709. "If a contract is unambiguous, the court must give

12

effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation." *Nova Research, Inc.*, 952 A.2d at 283.

The Conflict of Interest provision states:

> [Summit] shall not represent any individual or company directly or indirectly competing with [Proove] by offering same or similar Service(s) during the term of this Agreement and in accordance with Confidential Information, Trade Secrets and Competition provision in this Agreement.

ECF No. 1, Ex. A. at 4. Summit argues that this meant that Summit only violated the Conflict of Interest provision if it violated the Confidential Information, Trade Secrets and Competition provision.[7] ECF No. 39 at 3-4. Summit asserts that this interpretation is consistent with the plain meaning of the contract because the agreement is titled "*Non-Exclusive*

---

[7] The Confidential Information, Trade Secrets and Competition provision states:

> [Proove] has developed a unique business model and in the course of carrying out this Agreement, [Summit] will have access to Confidential Information, including without limitation, trade secrets, financial information, customer lists, marketing methods, pricing lists, data, properties, specification, personnel and internal affairs, relating to [Proove] . . . . Such Confidential Information is considered secret proprietary and disclosed to [Summit] in confidence solely for the purpose of carrying out [Summit's] duties hereunder and any handouts will be returned to [Proove] within ten (10) days of request by [Proove] of termination of this Agreement by [Proove] . . . .

ECF No. 1, Ex. A. at 5-6.

13

Independent Sales Organization Agreement," and "Services" is defined as Proove's "portfolio of laboratory testing services." *Id.* (emphasis in original).  In essence, Summit argues that to interpret the Conflict of Interest provision as barring Summit from working with any similar medical companies would effectively read-out the non-exclusive nature of the agreement and the definition of "services."  *Id.*

The Defendants reject Summit's interpretation.  They argue that Summit admitted "work[ing] for Proove's competitors," two genetic testing companies.  ECF No. 37 at 12-13.  The Defendants assert that the plain meaning of the provision barred Summit from working for other genetic testing companies, and that to read the provision as only requiring compliance with the Confidential Information, Trade Secrets and Competition provision would make the Conflict of Interest provision superfluous.  *See id.* ("The Agreement's unambiguous text demonstrates that the provisions are separate and distinct.").

Looking at the contract as a whole, the Conflict of Interest provision is ambiguous.  Interpreted in either manner, the provision would negate some portion of the contract; this contradicts the rules of contract interpretation.  *See Sagner v. Glenangus Farms, Inc.*, 198 a.2D 277, 283 (Md. 1964) ("A recognized rule of construction in ascertaining the true meaning of a contract is that the contract must be construed in its

14

entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed."). The Court cannot now conclude, as a matter of law, that Summit committed a breach. Further, even if the contract was to be interpreted in the manner advocated by the Defendants, there would still be a factual question of whether Summit breached the contract because the provision only bars the representation of companies with "same or similar Services." This requires the identification of what was included in Proove's portfolio and what services Summit provided.

Accordingly, Summit has sufficiently pled that Meshkin's statement was false.

3. Meshkin's Personal Liability

The Defendants also allege that the defamation claim against Meshkin must be dismissed because Summit is attempting to pierce the corporate veil. ECF No. 37 at 4-6. However, Maryland allows a corporate officer to be held personally liable if he "personally commits, inspires, or participates in [the tortious act], even though [it was] performed in the name of the corporation." *Toliver v. Waicker*, 62 A.3d 200, 205-06 (Md. Ct. Spec. App. 2013); *see also T-Up, Inc. v. Consumer Prot. Div.*,

801 A.2d 173, 199-200 (Md. Ct. Spec. App. 2002) ("If an officer either specifically directed, or actively participated or cooperated in the corporation's tort, personal liability may be imposed.") (internal quotations omitted). Here, Summit alleges that Meshkin personally sent the defamatory email. Am. Compl. at ¶ 24. Thus, he may be held personally responsible.

E. Tortious Interference with Business Relationships

To state a claim for tortious interference with business relationships, a plaintiff must allege "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 510, 665 A.2d 297, 314 (Md. Ct. Spec. App. 1995) (internal quotation omitted). "[W]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships. Wrongful or unlawful acts include common law torts and 'violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.'" *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*,

16

650 A.2d 260, 271 (Md. 1994) (quoting *K & K Management v. Lee,*
557 A.2d 965, 979 (Md. 1989)).

The only factual allegation in the amended complaint that
relates to Proove's interference with business relationships is
Meshkin's email to one of Summit's "business relation[s]." *See*
Am. Compl. at ¶¶ 24-27. Regardless of whether Meshkin was
correct in this email about Summit's breach or not, Summit has
not stated a tortious interference with business relationships
claim. The complaint simply states that "Proove and Meshkin's
statements resulted in actual loss to Summit." Am . Compl. ¶
47. There is no indication to whom this email was sent, and
whether that person changed his relationship with Summit because
of the email. There is simply no information to support
causation, and a conclusionary statement by Summit that it
suffered "actual loss" does not meet the pleading standards.
*See Med. Mut. Liab. Soc. of Md. v. B. Dixon Evander and Assocs.,*
*Inc.,* 660 A.2d 433, 439-41 (Md. 1995) (discussing causation).
Accordingly, this claim will be dismissed.

F. Fraudulent and Negligent Misrepresentation

To state an action for fraudulent misrepresentation, the
plaintiff must prove: "(1) that the representation made is
false; (2) that its falsity was either known to the speaker, or
the misrepresentation was made with such a reckless indifference
to truth as to be equivalent to actual knowledge; (3) that it

17

was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation." *Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 333 (1982)(internal quotations omitted).

The elements of negligent misrepresentation are that "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has the knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence." *Martens Chevrolet,* 292 Md. at 337.  "Negligent misrepresentation is more difficult to discern than fraudulent misrepresentation, because it depends on the existence of a duty owed by a defendant to the plaintiff."  *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1054 (Md. Ct. Spec. App. 2002).

Summit alleges that during the contract negotiations the Defendants misrepresented their intentions to "pay commissions for accounts that became active customers of Proove as a result of Summit's services and that Proove would not solicit Summit's sales representatives."  Am. Compl. ¶¶ 50, 59.  These promises are explicitly stated in the agreement.  ECF No. 1, Ex. A at 1-3.  The Defendants argue that the misrepresentation claims are not actionable because "expressions as to what will happen in the future are not actionable in fraud," and the promises are part of the contract.  ECF No. 37 at 14.

Maryland courts have rejected the Defendants' argument that no promise of future conduct is actionable in fraud.  If the promise is made with the current intention not to perform, then a plaintiff may have a claim for fraudulent misrepresentation.[8] *See Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1048 (Md. 1995).  Maryland courts have also permitted fraudulent and negligent misrepresentation claims for statements made during arms-length contract negotiations that induce the plaintiff to enter into the contract.  *See, e.g., Weisman v. Conners*, 540 A.2d 783, 793-99 (Md. 1988); *Greenfield v.*

---

[8] However, future promises do not sustain a claim for negligent misrepresentation because to remain actionable such promises must be made with a specific intent to deceive rather than mere negligence. *See Miller v. Fairchild Indus., Inc.*, 629 A.2d 1293, 1304 (Md. Ct. Spec. App. 1993).

*Heckenbach*; 797 A.2d 63, 76-82 (Md. Ct. Spec. App. 2002); *Lubore v. RPM Associates, Inc.*, 674 A.2d 547, 558-59 (Md. Ct. Spec. App. 1996); *Parker v. Columbia Bank*, 604 A.2d 521, 528-31 (Md. Ct. Spec. App. 1992).  However, in none of these negotiations were the misrepresentations incorporated into the contract itself.  Nor could the Court locate such a case.

Summit has not alleged any promise by the Defendants outside the contract itself. *See Am. Compl.* at ¶ 50.  Summit's argument would, in essence, make any breach of contract claim, a misrepresentation claim.  Without legal authority for such a drastic change of the law, the Court cannot adopt Summit's argument.[9]  Accordingly, the misrepresentation claims will be dismissed.

---

[9] In *Appel v. Hupfield,* 84 A.2d 94, 96 (Md. 1951), the Court of Appeals of Maryland stated that "[o]rdinarily fraud cannot be predicated on statements which are promissory in their nature, and therefore an action for deceit will not lie for the unfulfillment of promises or the failure of future events to materialize as predicted. Failure to fill a promise is merely a breach of contract, which must be enforced, if at all, by an action *ex contractu*."  In *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 665 A.2d 1038, 1048-49 (Md. 1995), the court examined *Appel's* conclusion that future promises should be brought solely as contract actions and recognized the limited exception of promises made with no intention of completion. However, the *Alleco* court refused to extend misrepresentation claims to cover "implied misrepresentation" because the "theory would extend the scope of a tort action for fraud or deceit beyond that recognized in our cases or, to the best of our knowledge, in cases elsewhere.  No authority or reason is cited for this expansion of the tort action of fraud or deceit.  Such an extension would convert a breach of a fiduciary relationship into a 'misrepresentation' giving rise to a tort action in

G. Tortious Interference with Prospective Economic Advantage

In the amended complaint, Summit's tortious interference with prospective economic advantage claim consists of four conclusionary paragraphs, alleging the Defendants' "intentional and willful acts to gain improper advantage in the marketplace," that were "calculated to cause damage," and caused "actual damage." Am. Compl. ¶¶ 70-71. There are no details about what damages were caused or how they were caused. *See id.* Such conclusionary allegations do not meet pleading standards; accordingly, the claim must be dismissed.[10]

H. Unjust Enrichment

Summit argues that Proove and Meshkin were unjustly enriched because they "benefited from access to Summit's sales representatives . . . [and] from the generation of business by Summit" without paying Summit's commissions. Am. Compl. at ¶ 75.

---

deceit." *Id.* The *Alleco* court's reasoning is similar to this Court's refusal to extend fraudulent and negligent misrepresentation claims to contract provisions.

[10] To the extent that this tortious interference claim incorporates the allegations regarding Meshkin's email, it must fail for the same reasons that the tortious interference with business relationships claim also fails.

To the extent that Summit is alleging that the Defendants improperly solicited Summit's sales representatives in violation of the contract, this is a breach of contract claim; moreover, soliciting sales representatives from Summit does not show interference by the Defendants with a relationship between Summit and a third party.

21

Unjust enrichment is a "quasi" or "implied" contract claim. *See Cnty Comm'rs of Caroline Cnty. v. J. Roland Sashiell & Sons, Inc.*, 747 A.2d 600, 606 (Md. 2000). "Quasi-contracts have often been called implied contracts or contracts implied in law; but, unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." Restatement (Second) of Contracts § 4 (1981) (quoted in *Cnty Comm'rs of Caroline Cnty.*, 747 A.2d at 606). Because unjust enrichment is a form of equitable relief created to fill the gap in the absence of a written contract, "no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Cnty Comm'rs of Caroline Cnty.*, 747 A.2d at 606-07.

In this case, there is an express contract between the parties, and payment of commissions is covered by that contract. Accordingly, the unjust enrichment claim will be dismissed.

I. Conversion

For its conversion claim, Summit alleges that the Defendants "committed distinct acts resulting in the wrongful deprivation of Summit's property," namely the Defendants "deprived Summit of funds to which Summit [was] entitled based upon Proove's nonpayment of commissions" and the Defendants'

"solicitation of Summit's sales representatives."[11]  Am. Compl. at ¶¶ 79-80.

"[T]o establish a conversion growing out of a contract, a positive tortious act beyond a mere breach of the contract is necessary."  *Fink v. Pohlman*, 582 A.2d 539, 542-43 (Md. Ct. Spec. App. 1990); *see also K & K Management v. Lee*, 557 A.2d 965, 969-70 (Md. 1989) *W. Md. Dairy v. Md. Wrecking & Equip. Co.*, 126 A. 135, 139 (Md. 1924).  The two "conversions" Summit alleges arise directly from breaches of contract provisions; no other "positive tortious act" is alleged.  *See* Am. Compl. at ¶¶ 79-80.  Accordingly, the conversion claim must be dismissed.

III. Conclusion

For the reasons stated above, the motion to dismiss will be granted in part and denied in part.

_6/23/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[11] In its opposition to the Defendants' motion, Summit also argues that the Defendants converted Summit's sales representatives.  ECF No. 39 at 18.  However, even if the Court were to accept these allegations, Summit cites no source supporting the proposition that a defendant can "convert" a human being.